UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

ARTHUR PASHA,

          Plaintiff,

                                          Case No.: 2:20-cv-13090

v.                                        Hon. Gershwin A. Drain

GROSSE POINTE PUBLIC
SCHOOL SYSTEM,

          Defendant.

_____

## OPINION AND ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT AND CANCELLING HEARING

### I.    INTRODUCTION

Plaintiff Arthur Pasha filed the instant action on November 20, 2020 against his former employer, the Grosse Pointe Public School System ("GPPSS") for failing to accommodate him and terminating his employment in violation of the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12101 *et seq.*  Now before the Court is the Defendant's Motion for Summary Judgment, filed on January 31, 2022.  Plaintiff filed a Response on February 28, 2022, and Defendant filed a Reply on March 11, 2022.  Upon review of the parties' submissions, the Court concludes oral argument will not aid in the resolution of this matter.  Accordingly, the Court will resolve the present motion on the briefs.  *See* E.D. Mich. L.R.

7.1(f)(2)  For the reasons that follow, the Court will grant the Defendant's Motion for Summary Judgment.

## II.    FACTUAL BACKGROUND

### A.  Plaintiff's Employment at GPPSS

Plaintiff began his employment with GPPSS at the end of 2001 when he was still a student at Grosse Pointe South High School.  Plaintiff was hired as a Construction Technician at the Christian A. Fenton Performing Arts Center ("PAC") which hosts plays, concerts, productions, and other events.  As a Construction Technician, Plaintiff was responsible for setting up stages and equipment for concerts and moving and building props.

In or about 2004 or 2005, Plaintiff became the Assistant Technical Director of the PAC.  Plaintiff served as the Assistant Technical Director until 2014, when he was promoted to Technical Director by then-Deputy Superintendent Christian Fenton.  After Mr. Fenton's retirement, Plaintiff reported to Lisa Abbey – Deputy Superintendent, Business Affairs and Support Services.  Following a central office reorganization in the fall of 2018, Plaintiff began reporting to Dr. Jon Dean, then-Deputy Superintendent of Educational Services.

As Technical Director, Plaintiff's duties included supervising PAC staff and student assistants in preparation for concerts and productions at the PAC and GPPSS's other performance stages.  As Technical Director, Plaintiff was a Non-

Instructional Supervisor ("NIS"), subject to the terms of the District's Employment

Relationship Policy as approved by the Board of Education.  An NIS is not a

bargaining unit employee and is subject to termination upon not less than four

weeks' notice.

　　As Technical Director, Plaintiff held significantly more responsibilities than

he did in his previous positions.  These responsibilities included supervising PAC

staff and student assistants in preparation for concerts and productions at the PAC

and GPPSS's other performance stages, supervising the building of stages and

props for shows at the PAC, and also assisting with technical needs at non-PAC

events, such as graduations and Board meetings.  The job description for Technical

Director required professional training in theater design and technical operation or

comparable training and/or experience, as well as knowledge of staging, lighting,

and sound techniques, set design and construction.  Plaintiff did not have a degree

in theater design.

### B.  Plaintiff's Injury

　　On November 24, 2014, Plaintiff reported a right ankle injury he incurred

while exiting a truck at a GPPSS middle school while carrying some equipment.

Plaintiff's doctor, Dr. Christopher Zingas, examined Plaintiff's injury and

determined Plaintiff snapped a tendon and ligaments in his ankle.  As a result,

Plaintiff had three surgeries. The first surgery occurred in January of 2015.

Plaintiff was off from work for three months after his first surgery.  The second surgery took place in August of 2015, and the third in October of 2018.  Following each surgery, Plaintiff was cleared to return to work with restrictions, including limited work hours, no lifting over thirty-five pounds, no squatting and no stair climbing.  Even though Plaintiff's physician instructed him to limit his workday to no more than 5 hours, Plaintiff often worked at least six hours a day because the department was shorthanded.

In July of 2018, Plaintiff was evaluated by Dr. Stanley Lee for an Independent Medical Examination ("IME") in relation to Plaintiff's Worker's Compensation Claim.  Based on Dr. Lee's examination, he found no evidence of ongoing pathology or impairments.  He indicated Plaintiff could return to work without restrictions and without the need for further diagnostic testing, treatment, or activity restrictions.  After the IME, Plaintiff returned to full time work.

On October 18, 2018, Plaintiff underwent the third surgery to clean the area and alleviate pain.  After the surgery, Plaintiff was off from work for about a month, and was released to return to work on November 12, 2018 with a restriction to "only work four to five hours a day until further notice."  Plaintiff claims no GPPSS staff ever advised him that his reduced work schedule was affecting his performance.

### C.  Complaints about the PAC's Technical Department

Around the same time as Plaintiff's final surgery, Dr. Dean met with Carolyn Gross, Chair of GPPSS's Music Department.  The purpose of the meeting was to discuss Ms. Gross's concerns with the PAC and how Plaintiff was performing as the Technical Director.  Ms. Gross did not share a glowing review with Dr. Dean.  Nor did three parent representatives of GPPSS's Theatre and Choir Programs, who echoed Ms. Gross's concerns that Plaintiff lacked the technical expertise to design and plan productions and was unable to supervise staff and delegate responsibilities.  These same parent representatives memorialized their concerns in a January 2019 letter addressed to Dr. Dean.  ECF No. 18, PageID.530-31.  Their letter  complained of poor leadership and unfilled positions in the PAC.  *Id.*  They further noted Plaintiff lacked the technical expertise to design and plan for productions, including an inability to properly budget and schedule for seamless productions. *Id.*  The parent representatives' letter asserted Plaintiff was not qualified for the position and the PAC's Technical Department and crew had been strained for years because of this.  The parent representatives concluded their letter by requesting GPPSS post a job opening for the Technical Director position and hire someone with "the technical and experiential qualifications necessary to perform the essential duties of the job[.]"  *Id.* at PageID.531.

5

In December of 2018, Dr. Dean and Nicole Pilgrim, GPPSS's Human

Resources Director, met with Plaintiff to discuss the reorganization of the PAC.  At

the meeting, Dr. Dean advised Plaintiff that he would begin reporting to Dr. Dean,

and that GPPSS was going to interview all PAC employees and various District

stakeholders about the operations of the PAC, its strengths and weaknesses, and

prospective areas of growth.

Throughout January and February of 2019, Ms. Pilgrim interviewed all PAC

staff members.  Ms. Pilgrim asserts that Plaintiff was the only PAC staff member

who did not raise concerns about the PAC's operation.   For example, in her

interviews of staff, Pilgrim discovered PJ Veltri, the PAC's Assistant Technical

Director, and Christine Karpinski, the PAC's Theater Technician, were tasked with

duties that should have been performed by Plaintiff, such as scheduling staff,

coordinating budgets, program planning, and managing staff.

On January 7, 2019, Plaintiff's doctor released Plaintiff to return to work

without restrictions.  Plaintiff claims he went to  his doctor and asked to be taken

off work restrictions because he needed to go "full time."  Plaintiff testified that he

went back to work full time because it might save his job if he were there, and the

job could get done.

On January 16, 2019, Ms. Pilgrim interviewed Plaintiff, with Dr. Dean in

attendance.  Dr. Dean informed Plaintiff at that time that a change in PAC

leadership was warranted based on Ms. Pilgrim's interviews, and he removed

Plaintiff from his position as Technical Director.   Thereafter, on February 13,

2019, Dr. Dean and Ms. Pilgrim met with Plaintiff and advised him that he would

no longer be the Technical Director of the PAC due to his performance

deficiencies.  Plaintiff claims Dr. Dean told him he was being terminated because

he lacked a degree, however, Dr. Dean denies making such a statement.

Dr. Dean provided Plaintiff with three options.  First, Plaintiff could be re-

assigned to his former position as Construction Technician, a non-supervisory

position he had performed successfully prior to becoming the Technical Director.

This would have required Plaintiff to take a significant pay cut.  Second, Plaintiff

could voluntarily resign his position from the PAC effective April 15, 2019

(allowing him to collect unused vacation pay), or finally, his employment would be

terminated in sixty days from February 13, 2019.  During a follow-up meeting on

February 19, 2019, Plaintiff asked to be terminated, effectively immediately.

GPPSS continued to pay Plaintiff until April 15, 2019 to remain consistent with the

NIS Employment Agreement.

On February 25, 2019, Plaintiff signed a letter from Dr. Dean

acknowledging his termination and describing the February 13, 2019 and February

19, 2019 meetings.   Defendant denies that Plaintiff indicated, at any point during

these discussions, that he had a disability or that his alleged disability prevented

him from performing the duties of Technical Director.  Dr. Dean further maintains that he understood Plaintiff's ankle injury to have been fully resolved at the time of the February 2019 meetings.

At his deposition, Plaintiff testified in regard to his termination that GPPSS "told me I was missing . . . in my workplace and then I was . .  not in there for . . some of the meetings and some of the shows and all of that."  *Id.*, PageID. 423. Plaintiff further claims Dr. Dean informed him he needed a degree.  Plaintiff argues he never received any complaints about his ineffectiveness as the Technical Director until December of 2018.  He asserts he never had any problems with students or the public during his employment with GPPSS.  Plaintiff filed a charge of disability discrimination with the Equal Employment Opportunity Commission ("EEOC"), claiming that "right after I had the surgery, right after I came back . . . full time [I] ended up being terminated."  Plaintiff argues he is unable to run and play sports with his children or ride his motorcycle.

## III.   LAW & ANALYSIS

### A.  Standard of Review

Federal Rule of Civil Procedure 56(a) empowers the court to render summary judgment forthwith "if the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is

entitled to judgment as a matter of law."  *See Redding v. St. Eward*, 241 F.3d 530, 532 (6th Cir. 2001).  The Supreme Court has affirmed the court's use of summary judgment as an integral part of the fair and efficient administration of justice.  The procedure is not a disfavored procedural shortcut.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 327 (1986); *see also Cox v. Kentucky Dept. of Transp.*, 53 F.3d 146, 149 (6th Cir. 1995).

The standard for determining whether summary judgment is appropriate is "'whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law.'" *Amway Distributors Benefits Ass'n v. Northfield Ins. Co.*, 323 F.3d 386, 390 (6th Cir. 2003) (quoting *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 251-52 (1986)). The evidence and all reasonable inferences must be construed in the light most favorable to the non-moving party.  *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986); Redding, 241 F.3d at 532 (6th Cir. 2001). "[T]he mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986) (emphasis in original); *see also National Satellite Sports, Inc. v. Eliadis, Inc.*, 253 F.3d 900, 907 (6th Cir. 2001).

If the movant establishes by use of the material specified in Rule 56(c) that there is no genuine issue of material fact and that it is entitled to judgment as a matter of law, the opposing party must come forward with "specific facts showing that there is a genuine issue for trial." *First Nat'l Bank v. Cities Serv. Co*., 391 U.S. 253, 270 (1968); *see also McLean v. 988011 Ontario, Ltd*., 224 F.3d 797, 800 (6th Cir. 2000). Mere allegations or denials in the non-movant's pleadings will not meet this burden, nor will a mere scintilla of evidence supporting the non-moving party. *Anderson*, 477 U.S. at 248, 252. Rather, there must be evidence on which a jury could reasonably find for the non-movant. *McLean*, 224 F.3d at 800 (citing Anderson, 477 U.S. at 252).

## B. Disability Discrimination

The ADA provides that no covered entity shall discriminate against a qualified individual on the basis of disability. 42 U.S.C. § 12112(a). Plaintiff can establish a prima facie case of disability discrimination by showing that he: (1) is disabled within the meaning of the ADA; (2) he was qualified for the position; and (3) suffered an adverse employment action. *Demyanovich v. Cadon Plating & Coatings, L.L.C.*, 747 F.3d 419, 433 (6th Cir. 2014). Plaintiff bears the burden of proving his disability was the "but for" cause of the adverse employment action. *Lewis v. Humboldt Acquisition Corp*., 681 F.3d 312 (6th Cir. 2012); *Jennings v.*

*Monroe Cty.*, No. 13-CV-13560, 2014 WL 6675277, at *8 (E.D. Mich. 2014), aff'd

sub nom. *Jennings v. Cty. of Monroe*, 630 F. App'x 547 (6th Cir. 2015).

Under the ADA, a person is disabled if he has "(A) a physical or mental

impairment that substantially limits one or more of the major life activities of such

individual;" or (B) a record of such an impairment;" or (C) is "regarded as having

such an impairment." 42 U.S.C. § 12102(1). It is well settled that the existence of a

medical condition "does not qualify automatically as a disability simply because it

is medically diagnosed or treatable."  *Mulholland v. Pharmacia & Upjohn*, 52 F.

App'x 641, 645 (6th Cir. Nov. 22, 2002).  "Major life activities" include "caring

for oneself, performing manual tasks, seeing, hearing, eating, sleeping, walking,

standing, lifting, bending, speaking, breathing, learning, reading, concentrating,

thinking, communicating, and working."  42 U.S.C. § 12102(2)(a).

The term "'substantially limits' shall be construed broadly in favor of

expansive coverage, to the maximum extent permitted by the terms of the ADA.

'Substantially limits' is not meant to be a demanding standard."  29 C.F.R. §

1630.2(j)(1)(i).   Whether a physical or mental impairment is substantially limiting

depends on whether it renders the person with the impairment unable to perform a

major life activity as compared to most people in the general population.  29

C.F.R. § 1630.2(j)(1)(ii).  In making this determination, it may be useful to

consider the nature and severity of the impairment, the duration or expected

duration of the impairment, and the permanent or long term impact resulting from the impairment.  29 C.F.R. § 1630.2(j)(4)(i).  Plaintiff can establish he is "regarded as" having such an impairment if he was "subjected to an action prohibited under [the ADA] because of an actual or perceived physical or mental impairment whether or not the impairment limits or is perceived to limit a major life activity." 42 U.S.C. § 12102(3).

Defendant argues Plaintiff cannot establish his prima facie case because he was not disabled within the meaning of the ADA.  The Court agrees.  Plaintiff claims his ankle injury has made certain activities more painful, such as walking, standing, and lifting more than 35 pounds. Plaintiff argues his doctor has restricted him from the use of ladders, shifts longer than six hours, and heavy lifting. He also complains he cannot run, which forecloses his ability to play sports with his children.  Finally, Plaintiff asserts he cannot ride his motorcycle due to his ankle injury.

Here, Plaintiff cannot establish he has a disability or that he was "regarded as" having a disability within the meaning of the ADA.  Plaintiff does not claim his injury substantially limits him from engaging in walking and standing activities compared to most people in the general population.  Plaintiff testified that he can walk without assistance, bear weight on his right ankle, and lift objects weighing more than 35 pounds if needed.  Plaintiff currently works as a truck driver.

Plaintiff primarily relies on *Burns v. Coca-Cola Enters.*, 222 F.3d 247 (6th Cir. 2000) in support of his contention that he is substantially limited in the major life activity of working.  *Id.* at 253.  In *Burns*, the employee was determined to be disabled within the meaning of the ADA because his serious back injury caused lifting restrictions that "precluded him from performing at least 50% of the jobs that he was qualified to perform given his educational background and experience." *Id.*

Conversely, Plaintiff has not presented evidence that his lifting restrictions or five-hour workday preclude him from performing at least 50% of the jobs he is qualified to perform based on education and experience.  The record further shows that Plaintiff has been gainfully employed as a truck driver since his termination from GPPSS.

Plaintiff also has not established that riding his motorcycle or playing with his kids are major life activities. Plaintiff asserts, without explanation, that his "ability to play with his children" is one of his "most important life activities." However, as held in *Anderson v. Inland Paperboard & Packaging*, 11 F. App'x. 432, 436-37 (6th Cir. 2001), Plaintiff must describe how playing with his kids and riding his motorcycle are major life activities for him.  Plaintiff does not do so, and his single conclusory statement is insufficient.   In fact, he admits riding his motorcycle is merely a "fun hobby."

13

Moreover, courts which have considered this issue have held activities not identified in the ADA or its regulations, such as running, jumping, biking, and playing with children, are not major life activities. *See Zwiebel v. R.J. Corman R.R. Co./Material Sales*, No. 3:11 CV 00236, 2013 WL 444348, at *7 (N.D. Ohio Feb. 4, 2013) (holding plaintiff cannot establish his knee condition makes him disabled even under the more liberalized definition of disability created by the ADA Amendments Act as running and jumping are not considered major life activities and he cannot demonstrate kneeling on one knee is encompassed by the major life activity of "bending"); *Rutherford v. Wackenhut Corp.*, No. 04–C–1216, 2006 WL 1085124, at *4 (D. Wis. April 25, 2006) ("running, jumping, skipping, dancing, chasing the grandchildren ... are not 'major life activities' (though pleasurable they may be)"); *Ruggles v. Keebler Co.*, 224 F.Supp.2d 1295, 1301 (D. Kan. 2002) (running and crawling on floor with grandchildren are not major life activities); *Piascyk v. City of New Haven*, 64 F.Supp.2d 19, 26 (D. Conn. 1999) (running, jumping, climbing stairs and ladders, and crawling are not major life activities) *Kirkendall v. United Parcel Serv., Inc.*, 964 F.Supp. 106, 110–11 (W.D.N.Y.1997) (playing with children in a "normal fashion" is not a major life activity).

Finally, Plaintiff also cannot show GPPSS regarded him as having a physical impairment that substantially limited a major life activity.  At the time of his termination, Plaintiff had no work restrictions, and even if Dr. Dean was aware of

the prior work restrictions, this is not enough to establish he regarded Plaintiff as having a physical impairment that substantially limits a major life activity. Accordingly, Plaintiff cannot establish his prima facie disability discrimination claim.

Plaintiff's disability discrimination claim is also subject to dismissal because Plaintiff cannot establish his alleged disability was the "but for" cause of his termination.  Under the "but for" standard of causation, a plaintiff must show the action complained of "would not have occurred in the absence of the alleged wrongful action or actions of the employer." *Univ. of Tex. SW. Med. Ctr. v. Nassar*, 570 U.S. 338, 360 (2013). Thus, a plaintiff alleging an ADA violation "cannot establish liability if [his] firing was prompted by both legitimate and illegitimate factors." *Seoane-Vasquez v. Ohio State Univ.*, 577 Fed. Appx. 418, 428-29 (6th Cir. 2014).

Here, there is no evidence Plaintiff's disability was the "but for" cause of his termination.  In *Jennings, supra* at *6, *11, the court concluded plaintiff could not establish that his mental impairment of PTSD was the "but for" cause of his termination where the record revealed plaintiff was terminated for improper and dangerous behavior, including drinking intoxicants and taking medication not prescribed to him, which landed him in the hospital while he was on call. His discharge papers from the hospital did not connect Plaintiff's PTSD with his

improper behavior, but rather, suggested plaintiff's actions were caused by acute work stress and marital strain and noted his PTSD was "subclinical." *Id.* at *3-*4, *10. Moreover, the board members who voted to terminate plaintiff had no access to plaintiff's medical records identifying his PTSD and plaintiff provided no evidence the decision-maker regarded plaintiff as having a disability. *Id.* at *10-*11.

Similarly, the February 25, 2019 letter to Plaintiff from Dr. Dean describes the bases for GPPSS's decision to remove Plaintiff from the Technical Director position – his performance deficiencies that were uncovered through interviews of PAC staff.  Absent from this letter is any hint that GPPSS believed Plaintiff was disabled from performing the duties of that position or that any alleged disability impacted the termination decision. In fact, Plaintiff was not under any work restrictions at the time Dr. Dean decided to remove him from the Technical Director position and Plaintiff admits GPPSS was not aware of any doctor's note or letter to the contrary. GPPSS understood Plaintiff to be fully recovered from his ankle injury. Throughout his discussions with Dr. Dean and Ms. Pilgrim regarding the end of his employment, Plaintiff at no point indicated he had a disability, or that his disability prevented him from performing the job duties of any GPPSS position.

Even if there were evidence Plaintiff's alleged disability played some role in his termination, Plaintiff admits he was told he was being terminated for a "lack of direction." Plaintiff acknowledges the lack of direction referred to his lack of communication and failure to provide direction to his subordinates. These issues are two of the key performance deficiencies GPPSS relied on in deciding to remove Plaintiff from the Technical Director position. Here, the presence of a substantial legitimate basis – Plaintiff's lack of direction – for the determination that Plaintiff should no longer fill the Technical Director position means he cannot show his alleged disability was the "but-for" cause of the employment action. *See McDonald v. UAW-GM Ctr. for Hum. Res*., 738 F. App'x 848, 855 (6th Cir. 2018)(affirming summary judgment on plaintiff's ADA claims where the record evidence, including plaintiff's own admission, showed that her deliberate insubordination was the "but for" cause of her suspension as opposed to her accommodation request).  Plaintiff cannot establish a prima facie case of disability discrimination and GPPSS is entitled to judgment in its favor on this claim.

### C.  Failure to Accommodate

As an initial matter, the Court denotes that while Plaintiff's response asserts GPPSS failed to accommodate Plaintiff's disability, a review of the brief reveals Plaintiff's focus is solely on his disability discrimination claim rather than his failure to accommodate claim.  However, even if Plaintiff had properly responded

to Defendant's argument, Plaintiff's failure-to-accommodate claim fails because Plaintiff cannot establish he is disabled under the ADA or that GPPSS refused to implement any of his reasonable accommodation requests.

To establish a prima facie case for failure-to-accommodate under the ADA, Plaintiff must show: 1) he is disabled; 2) he is otherwise qualified; 3) GPPSS knew or had reason to know of his disability; 4) he requested a reasonable accommodation; and 5) GPPSS failed to provide the reasonable accommodation. *Mosby-Meachem v. Memphis Light, Gas & Water Div.*, 883 F.3d 595, 603 (6th Cir. 2018); *Swann v. Washtenaw Cty.*, 221 F. Supp. 3d 936, 941-42 (E.D. Mich. 2016). A requested accommodation for a disability must not impose an undue hardship on the employer and must be objectively reasonable. *Id*.

After his October 2018 surgery, Plaintiff alleges he made a request for the following accommodations: a modified job schedule, a reduced job schedule, limits on physical activity, acquisition or modification of equipment and/or devices, job restructuring (which Plaintiff testified meant he decided which employees completed certain tasks), and the hiring of additional PAC staff to assist him.

Plaintiff testified his requests for a "modified" and "reduced" schedule were the same, and GPPSS permitted him to follow such a schedule working four to five hours a day. In response to Plaintiff's request for additional staff, Plaintiff admits

GPPSS created job postings, interviewed candidates, and continuously hired individuals to work in the PAC to assist him. While Plaintiff sometimes worked over five hours a day when he felt he needed to accomplish certain tasks, GPPSS never required Plaintiff to work beyond his modified schedule and Plaintiff admits he did so on his own accord.

GPPSS was not required to acquire or modify equipment and/or devices, suggested by Plaintiff, because it offered multiple alternatives to address Plaintiff's injury and work restrictions, including approving his reduced work schedule and hiring additional staff. As the supervisor, Plaintiff also had the ability to limit his physical activity and delegate tasks. Plaintiff has provided no evidence that these accommodations were inadequate. *See Trepka v. Bd. of Educ.*, 28 F. App'x 455, 459 (6th Cir. 2002) (holding an employer need not provide the accommodation that the employee requests or prefers and retains "ultimate discretion" to choose another effective accommodation, particularly if less expensive or easier to provide, unless the employee can establish the inadequacy of the alternative).

Plaintiff himself admits the acquisitions or modifications to equipment he suggested were not reasonable. He testified there was "not that much" GPPSS could do regarding this request because it would have required GPPSS to purchase "a lot of expensive stuff" and he did not expect GPPSS to pay that amount of money. ECF No. 18, PageID.442. Plaintiff's admission highlights the significant

19

financial strain granting such an accommodation would have placed on GPPSS. As such, any attempt to grant this request would have also imposed an undue hardship on GPPSS. *Gazvoda v. Sec'y of Homeland Sec*., 258 F. Supp. 3d 799, 822 (E.D. Mich. 2017 (considering the nature and cost of an accommodation and the overall financial resources of the facility involved to determine whether proposed accommodation would impose an undue hardship).

Plaintiff cannot establish his failure to accommodate claim where all of his requested accommodations were provided except for one he admits was unreasonable. *Deister v. AAA Auto Club of Michigan*, 91 F. Supp. 3d 905, 928 (E.D. Mich. 2015) (finding plaintiff cannot establish his failure to accommodate claim where he did not meet his initial burden to show the requested accommodation was objectively reasonable, i.e. possible). GPPSS is also entitled to summary judgment on Plaintiff's failure to accommodate claim for this additional reason.

## IV.   CONCLUSION

Accordingly, for the reasons articulated above, Defendant's Motion for Summary Judgment [#16] is GRANTED.

SO ORDERED.

Dated:  September 14, 2022                /s/Gershwin A. Drain
                                          GERSHWIN A. DRAIN
                                          United States District Judge

CERTIFICATE OF SERVICE

Copies of this Order were served upon attorneys of record on
September 14, 2022, by electronic and/or ordinary mail.
/s/ Teresa McGovern
Deputy Clerk